UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Steven Roque, | ) | |
| | ) | No. 12 C 3788 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Roofers' Unions Welfare Trust Fund, | ) | |
| Julia A. Rachal, and the | ) | |
| Board of Trustees of the Roofers' Unions | ) | |
| Welfare Trust Fund, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steven Roque brings this suit against Defendants Roofers' Unions Welfare Trust Fund ("Fund"), Julie Rachal, and the Board of Trustees of the Roofers' Unions Welfare Trust Fund ("Trustees"). The amended complaint sets forth a claim for benefits under § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) ("Count I"); requests that the Fund be estopped from denying coverage because it made knowing misrepresentations about Roque's coverage ("Count II"); and alleges a breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), against Rachal for failing to properly respond to participant inquiries ("Count III"), a breach of fiduciary duty under § 502(a)(3) against Rachal for failing to adequately train authorized representatives to properly respond to such inquiries ("Count IV"), and a breach of fiduciary duty against the Trustees for failing to properly monitor Rachal and Fund representatives ("Count V"). R. 25, Am. Compl. Defendants move to

1

dismiss Counts II, III, IV, and V. R. 27. For the following reasons, defendants' motion to dismiss is granted. Counts II, III, IV, and V are dismissed. Only Count I of Roque's amended complaint remains.

**Background**

The following relevant facts, drawn from Roque's amended complaint, are accepted as true, and all reasonable inferences are drawn in his favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Roque is employed by M.W. Powell Company. R. 25 at ¶ 7. As an employee of M.W. Powell Company, Roque was covered by the Fund pursuant to a collective bargaining agreement. *Id.* The Fund is an employee welfare benefit plan, and Roque, as an employee, received coverage under the Plan. *Id.* at ¶ 8. Defendants Trustees and Rachal, as the Fund Manager, administered the Plan. *Id.* at ¶¶ 9-12.

On March 19, 2001, Roque, while on the job as a roofer, fell through a roof and sustained injuries to his heel, pelvis, and back and Reflex Sympathetic Dystrophy Syndrome in his foot. *Id.* at ¶ 14. As a result of his injuries, a spinal cord stimulator was inserted into his back on November 22, 2006. *Id.* at ¶¶ 14, 16. Workers' compensation insurance covered Roque's medical expenses, including the cost of the procedure. *Id.* at ¶¶ 15, 16. Roque settled his workers' compensation claim for $90,000. *Id.* at ¶ 19. The settlement agreement provided that Roque would assume all responsibility for any future medical expenses. *Id.* at ¶ 21. In May 2011, Roque began experiencing pain in his foot. *Id.* at ¶ 22. Dr. Vikram Patel, Roque's

surgeon, advised him that the spinal cord stimulator may need to be repaired or replaced. *Id.*

The Plan and summary plan description ("SPD") describe the health benefits available under the Fund. R. 28, Exhs. A, B.[1] Both the Plan and SPD excluded coverage for treatment of injuries incurred while performing an act of employment where the benefits were payable by workers' compensation. The Plan provides:

> No PLAN payment of any kind, except under the Loss of Life Benefit, will be made as a result of, or for charges incurred for the treatment of, any accidental bodily injury, sickness, or disease sustained while the individual was performing any act of employment or doing anything pertaining to any occupation or employment for remuneration or profit or for which benefits are or may be payable in whole or in part under any Workers' Compensation Law, Employer's Liability Law, Occupational Diseases Law, or similar law.

R. 28-2 at 13, Article 3.01.C.15 (emphasis in original). The SPD similarly provides:

> Charges incurred or loss sustained in connection with, or as the result of, any accidental bodily injury, sickness or disease sustained while the Covered Person is performing any act of employment (including self-employment) or doing anything pertaining to any occupation, employment or activity, for remuneration or profit whether or not benefits are payable in whole or in part under any Workers' Compensation Law, Employer's Liability Law, Occupational Diseases Law or similar law.

R. 28-15 at 17. The SPD further advises participants: "If you have any questions about your benefits or your status under the Plan, contact the Fund Office at the address or telephone number shown on the inside of the front cover." R. 25 at ¶ 31.

---

[1] Defendants attached the Plan and SPD to their motion to dismiss. Because these documents are referred to in the amended complaint and are central to Roque's claims, the Court may consider them in ruling on the motion to dismiss. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

On June 3, 2011, Roque contacted the Fund Office to ask whether the Fund would cover the proposed procedure. *Id.* at ¶ 23. Roque spoke with a Fund representative who gave him the telephone number of Med-Care Management ("Med-Care")—a third party contracted by the Fund to determine whether a procedure is covered under the terms of the Plan—and advised him to speak with Med-Care for answers to his questions. *Id.* at ¶¶ 23, 33. Roque called the Fund Office again later that day. *Id.* at ¶ 26. During that phone call, Roque told the Fund representative that: (1) he suffered a workplace injury in 2001; (2) the workers' compensation insurer covered the cost of the insertion of the spinal cord stimulator; (3) the workers' compensation case was closed with no open-ended settlement; and (4) the workers' compensation insurer would not pay for another spinal cord stimulator. *Id.* at ¶ 27. The Fund representative informed Roque that the Fund Office did not confirm coverage for such a procedure, that Med-Care provides approval for procedures, and that Roque should follow up with Med-Care. *Id.* Following this phone call, Roque called Med-Care to confirm coverage for the proposed procedure. *Id.* at ¶ 36. He provided the same information to Med-Care that he provided to the Fund Office in his second phone call, and Med-Care informed him that if workers' compensation denied the claim, the Plan would pay the claim. *Id.* at ¶¶ 36-37.

On June 9, 2011, Med-Care issued a notification of authorization for outpatient admission for reflex sympathetic dystrophy of the lower limb, equipment failure, and replacement of the spinal cord stimulator. *Id.* at ¶ 39; *see also* R. 25-5,

4

Notification of Outpatient Admission. The notification was issued to Roque and his health service providers. *Id.* The notification further provided that "[t]his notification does not guarantee payment by the patient's medical plan. Payment is subject to the patient's eligibility and coverage limitations at the time services are delivered. . . . For confirmation of eligibility and benefits, please call the Fund Office." R-25-5. Roque's surgery was scheduled for June 28, 2011. R. 25 at ¶ 41. After issuance of the authorization, Med-Care sent a copy of the pre-approval notice to the Fund Office, and on it, Med-Care notified the Fund Office that liability for the surgery may be completely or partially the responsibility of another insurer because of "an injury which may be covered by Workers' Compensation Insurance." *Id.* at ¶ 40; *see also* R. 25-6. Between the June 9, 2011 receipt of the notification of the approval of the procedure and the June 28, 2011 surgery, the Fund Office did not contact Roque to advise him that the surgery may be excluded. R. 25 at ¶ 43.

The surgery was performed on June 28, 2011. *Id.* at ¶ 44. After the surgery, the Fund Office sent Roque Medical/Injury/Accident Information forms. *Id.* at ¶ 49; R. 25-7, Exh. 7. Roque returned these forms, noting on them "Not a new accident. '2001' accident paid through. Comp. case is now closed, no open medical. They will not cover another spinal cord stimulator since case was settled in '07." R. 25-7. He also submitted a copy of the workers' compensation settlement. R. 25 at ¶ 49.

On August 15, 2011, the Fund Office informed Roque that his claim was denied. *Id.* at ¶ 50. On August 23, 2011, citing the exclusion from the SPD, the Plan reiterated it was not covering Roque's claim. *Id.* at ¶¶ 51-52. Roque appealed the

5

August 23, 2011 benefit denial, arguing that the Plan's exclusion was narrower than the SPD's exclusion, and that under the Plan's language, his claim was not excluded. *Id.* at ¶ 54; *see also* R. 28-23, Exh. D. Following an appeals hearing before the Trustees, the Fund's Claim Review Committee upheld the denial of Roque's claim. R. 25 at ¶¶ 61, 66. Roque then filed this lawsuit, raising five claims under ERISA. R. 25.

## Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (internal quotation marks omitted). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A

6

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## Analysis

### I. Sufficiency of Allegations for Estoppel Claim

Defendants first contend that Count II of Roque's amended complaint must be dismissed as a matter of law because it fails to plead a plausible estoppel claim. According to Roque, the Fund, through Med-Care, knowingly misrepresented that his surgery would be covered by the Plan if his workers' compensation insurance did not cover it and that Med-Care, rather than the Fund Office, would determine if the Plan covered the procedure. R. 25 at ¶¶ 89, 90. Roque then detrimentally relied on these misrepresentations and proceeded with the surgery. *Id.* at ¶ 90. As a result of these misrepresentations, Roque requests that the Fund be estopped from denying coverage for his surgery. *Id.* ¶ 92.

"The written plan document ordinarily governs ERISA plan administration." *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007). Thus, "statements or conduct by individuals implementing the plan can only estop an employer from enforcing the plan's written terms in 'extreme circumstances.'" *Id.* (quoting *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 639 (7th Cir. 2004)). To prevail on an estoppel claim under ERISA, the Seventh Circuit requires that a plaintiff demonstrating extreme circumstances also show: "(1) a knowing misrepresentation; (2) made in

7

writing; (3) reasonable reliance on that misrepresentation by the plaintiff; and (4) that the reliance was to the plaintiff's detriment." *Pearson v. Voith Paper Rolls, Inc.*, 656 F.3d 504, 509 (7th Cir. 2011); *see also Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir. 1999). The Seventh Circuit has recognized an exception to this general rule "when plan documents are ambiguous or misleading, in which case oral representations as to the meaning of the documents may be relevant." *Vallone*, 375 F.3d at 639; *see also Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 588 (7th Cir. 2000). Under this exception, oral misrepresentations may be a basis for an ERISA estoppel claim if (1) the plan was ambiguous; and (2) an agent of the plan, or someone with apparent authority to interpret the plan, made the oral misrepresentations. *Bowerman*, 226 F.3d at 588.

Defendants contend that Roque has failed to state a plausible claim for estoppel.[2] According to the defendants, Roque cannot prevail on his estoppel claim because he has not established a knowing, written misrepresentation. Roque counters by invoking the exception to the general rule, arguing that the language of the plan exclusion is ambiguous. Roque thus contends that the oral representations made to him can support an estoppel claim.

Here, the Plan provision at issue, Article 3.01.C.15, provides:

---

[2] At the outset, defendants argue that an estoppel claim cannot be brought against a multi-employer plan. This Court, however, need not answer this question for even if these claims are recognized against a multi-employer plan, the Court finds that Roque has failed to state a plausible claim for estoppel. *See Pearson*, 656 F.3d at 508 (declining to resolve question of viability of claim where answer was unnecessary to outcome of case).

> No PLAN payment of any kind, except under the Loss of Life Benefit, will be made as a result of, or for charges incurred for the treatment of, any accidental bodily injury, sickness, or disease sustained while the individual was performing any act of employment or doing anything pertaining to any occupation or employment for remuneration or profit or for which benefits are or may be payable in whole or in part under any Workers' Compensation Law, Employer's Liability Law, Occupational Diseases Law, or similar law.

R. 28-2 at 13. As defendants point out, Roque's amended complaint does not include an allegation that the Plan was ambiguous. And the only argument Roque offers in support of his claim that the language is ambiguous in his response to defendants' motion to dismiss is that the "as a result of" language in the exclusion is unclear and "could be construed multiple ways." R. 29 at 12. Roque, however, does not set forth what other ways the language could be construed. In any event, Roque's claim of ambiguity is unconvincing. The language of the Plan exclusion unambiguously excepts from plan payment any employment injury for which benefits are payable under workers' compensation law.

Because the language is not ambiguous, as Roque contends, he may only prevail on his estoppel claim if after viewing the allegations in his amended complaint in the light most favorable to him, he can demonstrate the elements of an estoppel claim. Roque has failed to do so. Even if Roque could demonstrate that a knowing misrepresentation was made, he cannot establish that the misrepresentation was in writing. Accordingly, his estoppel claim fails.[3] Roque

---

[3] Because the Court finds that Roque has not demonstrated an element of an estoppel claim, namely that defendants made a knowing written misrepresentation, this Court need not address whether Roque satisfies the remaining elements—reasonable and detrimental reliance on the misrepresentation.

focuses on the first element of an estoppel claim, arguing that the Plan knowingly misrepresented to him via his telephone calls with Med-Care representatives that his surgery would be covered. Even if that were the case—and the Court need not determine that here—Roque's estoppel claim is doomed in any event because Roque has not demonstrated (or even argued) that any intentional misrepresentation was in writing. The notification from Med-Care, while authorizing the surgery as medically necessary, explicitly warned Roque that the notification did not guarantee payment by the patient's medical plan. R. 25-5. Because Roque has failed to establish a knowing, written misrepresentation, his estoppel claim cannot succeed. *See Kannapien*, 507 F.3d at 637-38 (where plan's language was unambiguous, written representation is required to trigger estoppel). Accordingly, the Court finds that Roque has failed to plead sufficient facts to show a plausible claim for relief for estoppel under the narrow circumstances in which such claims are allowed and dismisses Count II of his amended complaint.

## II. Breach of Fiduciary Duty Claims under Section 502(a)(3)

Defendants next argue that the counts premised on a breach of fiduciary duty—Counts III, IV, and V—must be dismissed because they are merely repackaged claims for benefits under § 502(a)(1)(B), and where a claim for benefits is available under that section, equitable relief under § 502(a)(3) is unavailable as a matter of law. Defendants further argue that dismissal is warranted because even if Roque can bring breach of fiduciary duty claims under § 502(a)(3), he has not sufficiently pled them in his complaint, and additionally, Roque failed to exhaust

his administrative remedies regarding these claims. Counts III, IV, and V fail as a matter of law because an adequate remedy is available under § 502(a)(1)(B). Accordingly, the Court need not reach the remainder of defendants' arguments.

Roque brings Count I pursuant to § 502(a)(1)(B), which provides:

> A civil action may be brought by a participant or beneficiary [of an ERISA plan] to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). In Counts III, IV, and V, pled in the alternative to Count I, Roque brings breach of fiduciary duty claims. As a remedy for these breaches, Roque seeks relief under § 502(a)(3), which provides that a civil action may be brought by a participant, beneficiary, or fiduciary

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

In arguing that Roque cannot bring a claim under § 502(a)(3) because he already has an adequate remedy under § 502(a)(1)(B), defendants rely on *Varity Corp. v. Howe*, 516 U.S. 489 (1996). There, the Supreme Court described § 502(a)(3) as a "catchall" provision that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." 516 U.S. at 512. The Court thus held that individuals could recover under § 502(a)(3) but noted that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which

11

case such relief normally would not be 'appropriate.'" *Varity*, 516 U.S. at 515. A plaintiff thus cannot seek equitable relief under § 502(a)(3) when ERISA provides adequate relief by the right to bring a claim for the denial of benefits under § 502(a)(1)(B). *Varity*, 516 U.S. at 515.

The Seventh Circuit has not yet expressly determined whether, under *Varity*, a claim for benefits under § 502(a)(1)(B) bars a § 502(a)(3) claim for equitable relief. It has, however, recognized that "a majority of the circuits" have interpreted *Varity* as holding that "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un* available under subsection (a)(3)." *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009); *see also Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006) ("[T]he great majority of circuits [5th, 6th, 8th, 9th, and 11th] have interpreted *Varity* to hold that a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3)."). Indeed, other courts in this district have almost uniformly held that § 502(a)(3) claims must be dismissed if relief may be obtained under § 502(a)(1)(B). *See, e.g., Schatzel v. Cent. States SE. & SW. Areas Pension Fund*, — F. Supp. 2d —, 2013 WL 1729479, at *8 (N.D. Ill. 2013); *Schultz v. Prud. Ins. Co. of Am.*, 678 F. Supp. 2d 771, 779-80 (N.D. Ill. 2010); *Hakim v. Accenture United States Pension Plan*, 656 F. Supp. 2d 801, 810-11 (N.D. Ill. 2009) (citing cases); *see also Krase v. Life Ins. Co. of N. Am.*, No. 11 C 7659, 2012 WL 4483506, at *3 (N.D. Ill. Sept. 27, 2012); *Zuckerman v. United of Omaha Life Ins. Co.*, No. 09 C 4819, 2010 WL 2927694, at *6-7 (N.D. Ill. July 21, 2010); *Rice v. Humana Ins. Co.*, No. 07 C 7175,

2007 WL 1655285, at *3-4 (N.D. Ill. June 4, 2007); *Moffat v. Unicare Midwest Plan Group 314541*, No. 04 C 5685, 2005 WL 1766372, at *5 (N.D. Ill. July 25, 2005); *Jurgovan v. ITI Enters,*, No. 03 C 4627, 2004 WL 1427115, at *4 (N.D. Ill. June 23, 2004); *Erikson v. Ungaretti & Harris-Exclusive Provider Plan*, No. 03 C 5466, 2003 WL 22836462, at *3 (N.D. Ill. Nov. 24, 2003).

Roque discounts these cases, arguing that they were decided before the United States Supreme Court's decision in *Cigna Corp. v. Amara*, — U.S. —, 131 S. Ct. 1866 (2011), which, according to Roque, changed the nature of equitable remedies available under § 502(a)(3), allowing for certain forms of monetary relief. This is questionable as the Court's discussion of equitable remedies under § 502(a)(3) is arguably dicta. *See Amara*, 131 S. Ct. at 1883 (Scalia, J. dissenting). In any event, *Amara* did not, as Roque contends, alter the rule announced in *Varity*. *See Krase*, 2012 WL 4483506, at *3 n. 5; *see also Biglands v. Raytheon Employee Savings & Inv. Plan*, 801 F. Supp. 2d 781, 786 (N.D. Ind. 2011). Even if the relief Roque seeks can be characterized as a form of monetary relief available under § 502(a)(3) pursuant to *Amara*, as discussed below, Roque has failed to demonstrate that relief is unavailable under § 502(a)(1)(B). Because adequate relief is available under that subsection, relief is unavailable under § 502(a)(3).

It bears mentioning that the aforementioned precedent does not foreclose simultaneous claims under § 502(a)(1)(B) and § 502(a)(3). Indeed, the door remains open for an ERISA plaintiff to bring a claim under both sections if the claims are truly distinct. *Krase*, 2012 WL 4483506, at *3. Only where § 502(a)(1)(B) provides

adequate relief is identical relief under § 502(a)(3) unavailable. At the same time, however, an ERISA plaintiff is not permitted to "repackage" a denial-of-benefits claim as a claim for equitable relief under § 502(a)(3). *Zuckerman*, 2010 WL 2927694, at *5-6. The focus of the inquiry here is whether § 502(a)(1)(B) provides adequate relief for Roque's alleged injuries. If so, his § 502(a)(3) claims must be dismissed. In conducting this inquiry, the Court notes that whether Roque can actually recover under § 502(a)(1)(B) is not the relevant question. Rather, the issue is simply whether an adequate remedy is available. *Hakim*, 656 F. Supp. 2d at 812 (stating "whether [p]laintiff's § 502(a)(1)(B claim will succeed is irrelevant; the pertinent inquiry is whether [p]laintiff can state a claim under § 502(a)(1)(B)") (citing cases).

In Count I, Roque invokes section § 502(a)(1)(B) and requests monetary relief in the form of all past due benefits on his claims for his second surgery. R. 25 at ¶ 86. In Counts III, IV, and V, Roque relies on § 502(a)(3) and seeks monetary relief "in an amount equal to the cost of services Roque incurred because of the breaches of fiduciary duty." *Id.* at ¶¶ 102, 115, 129. After a review of Roque's amended complaint, the Court finds that the monetary relief that Roque seeks for his § 502(a)(3) claims is the same relief he seeks for his § 502(a)(1)(B) claim. *See, e.g.*, *Krase*, 2012 WL 4483506, at *3 ("Krase seeks the same relief for the same injury under both subsections: 'life insurance benefits owed to him in the amount of $226,000.'"); *Zuckerman*, 2010 WL 2927694, at *7 ("In Plaintiff's case, her alleged injury came solely because of the denial of her benefits; absent the denial of

14

benefits, there would be no injury."); *see also Hakim*, 656 F. Supp. 2d at 813 (noting that plaintiff's §§ 502(a)(3) and (a)(1)(B) claims were supported by "identical" allegations, supporting conclusion that claims were duplicative); *Biglands*, 801 F. Supp. 2d at 787 (stating effect of any identified equitable remedy "would merely be to compel the defendant to pay benefits due under the terms of the ERISA Plan, all of which is available to Plaintiff under § 1132(a)(1)(B)"). Indeed, Roque has not identified any relief he seeks that is different from his claim for benefits. If Roque were to succeed on his breach of fiduciary duty claims, the effect of that success would simply be the payment of the costs of the second surgery, which is the same as the benefits he alleges is owed to him under § 502(a)(1)(B). Because there is no injury separate and distinct from the claim of benefits, Roque's request for relief under § 502(a)(3) is duplicative of that claim.

Roque contends nevertheless that § 502(a)(1)(B) is not an adequate remedy for his breach of fiduciary duty claims. Roque claims that he is not seeking benefits due from the Plan as a remedy for these breaches; instead, he seeks "make-whole monetary relief from the fiduciaries for the cost of the surgery with which he proceeded." R. 29 at 8 (emphasis omitted). But this argument misses the point. By arguing that he seeks monetary relief for the cost of the surgery as a remedy for the breaches of fiduciary duty, Roque makes clear that he is, though under a different label, seeking the same relief sought for his denial-of-benefits claim, namely the costs of the second surgery.

Citing Federal Rule of Civil Procedure 8(d)(2), Roque further contends that "[n]othing in *Varity* prevents a plaintiff from alternatively pleading benefits due under the plan and the value of the expense that would not have been incurred but for a breach of fiduciary duty of disclosure." R. 29 at 7. According to Roque, his § 502(a)(1)(B) claim arises from the interpretation of the plan and the non-payment of a claim whereas his § 502(a)(3) claim arises from defendants' breaches by drafting vague language, inviting him to call them with questions, and then misleading him into believing a claim would be paid. *Varity* makes clear that an ERISA plaintiff is prohibited from repackaging a denial-of-benefits claim as a claim for equitable relief. "In other words, *Varity* and its progeny bar plaintiffs from getting two bites at essentially the same apple by asserting identical claims under §§ 502(a)(3) and 502(a)(1)(B)." *Zuckerman*, 2010 WL 2927694, at *7. Dismissal of Roque's equitable claims under *Varity* does not preclude him from raising alternative, inconsistent theories but from "asserting the same legal theory twice under separate labels." *Id.*; *Krase*, 2012 WL 4483506, at *3. Here, the Court has determined that Roque is seeking the same relief—payment for his second surgery—for the same injury under both § 502(a)(1)(B) and § 502(a)(3). This is prohibited under *Varity* because adequate relief is available under § 502(a)(1)(B). Such a finding "does not prohibit [Roque] from asserting alternative theories of liability, but rather limits the availability of a remedial provision in ERISA's civil enforcement framework." *Schultz*, 678 F. Supp. 2d at 781 (citing cases). Roque is still free to pursue his theory for relief under § 502(a)(1)(B). That avenue is not foreclosed.

Finally, relying on *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452 (7th Cir. 2010), Roque argues that he has adequately pled a breach of fiduciary duty claim. But this argument and this case go to the merits of Roque's breach of fiduciary duty claims. The argument does not address the issue of whether Roque seeks identical relief under § 502(a)(3) and § 502(a)(1)(B). Nor does *Kenseth* address this issue for in *Kenseth* the plaintiff did not bring simultaneous claims under § 502(a)(3) and § 502(a)(1)(B). 610 F.3d at 482-83. Rather, the plaintiff there only sought relief under a theory of equitable estoppel and § 502(a)(3).

In sum, because Roque's § 502(a)(3) claims can be remedied adequately under § 502(a)(1)(B), he cannot seek identical relief under § 502(a)(3).[4] Accordingly, defendants' motion to dismiss Counts III, IV, and VI is granted.

---

[4] Defendants additionally argue that Roque has failed to sufficiently plead his breach of fiduciary duty claims and exhaust his administrate remedies regarding them. Because the Court concludes that Counts III, IV, and V fail as a matter of law on an alternative ground, the Court need not reach these arguments.

17

**Conclusion**

For the foregoing reasons, the defendants' motion to dismiss is granted, and Counts II, III, IV, and V are dismissed. Only Count I of Roque's amended complaint remains.

ENTERED:

_____
Thomas M. Durkin
United States District Judge

Dated: May 21, 2013